MAVERIK COUNTRY STORES,
INC., Petitioner,

v.

The INDUSTRIAL COMMISSION
OF UTAH and Vicky Ann
McCord, Respondents.

Nos. 920206–CA, 910413–CA.

Court of Appeals of Utah.

Sept. 7, 1993.

Ronald C. Barker, Mitchell R. Barker, David G. Cundick, Salt Lake City, for petitioner.

Benjamin A. Sims, Gen. Counsel, Sharon J. Eblen, Indus. Com'n of Utah, Salt Lake City, for respondent Indus. Com'n of Utah.

James W. Stewart, Lisa A. Jones, Jones, Waldo, Holbrook & McDonough, Salt Lake City, for respondent McCord.

1. This opinion replaces the earlier opinion in cases No. 920206–CA and No. 910413–CA, issued June 3, 1993, pursuant to cross-petitions for rehearing granted August 28, 1993.

Before BILLINGS, JACKSON and RUSSON, JJ.

## AMENDED OPINION [1]

BILLINGS, Presiding Judge:

Maverik Country Stores brings separate appeals from two decisions of the Industrial Commission of Utah. The first appeal is from the Industrial Commission's determination that Maverik violated Utah Code Ann. §§ 34–35–1 to –8 (1988 & Supp.1993), the Utah Anti–Discrimination Act, in its treatment of Vicky Ann McCord. The second appeal is from the Industrial Commission's ruling that Maverik's request for agency review was untimely. We dismiss the first appeal and affirm the ruling in the second. We remand for assessment of attorney fees.

## FACTS

Ms. Jones, a Maverik store manager, hired Ms. McCord as a convenience store clerk on September 30, 1988.[2] McCord worked six hour shifts, four days a week at $3.35 per hour during her two weeks of part-time employment. While at work on October 14, 1988, McCord experienced tightness in her chest and asked Jones if she could go to the hospital. The doctor at the hospital indicated McCord's heart was fine. McCord subsequently called Jones and offered to finish her shift. Jones told her to stay home and rest. While talking to McCord later that day, Jones stated her mother had died from heart problems and her son had recently had open heart surgery. She expressed concern over the seriousness of McCord's heart problems and indicated she would be afraid to leave McCord in the store alone. Jones then terminated McCord's employment.

McCord had answered "no" to an inquiry on the employment application regarding whether she had any heart problems which would limit her ability to perform the job. She did have a condition known as mitral

2. Because Appellant does not challenge the factual findings of the Industrial Commission, we recite the facts in accord with those findings. *See King v. Industrial Comm'n,* 850 P.2d 1281, 1285 (Utah App.1993).

valve prolapse which the parties stipulated was a "usually benign condition." A doctor examined McCord after she was terminated and found employment posed no risk to her.

Jones subsequently filled out a company form, a Record of Employee Counseling, describing the event and indicating she was very concerned McCord's heart problem would reoccur if she continued her job with Maverik. In a later letter to the Utah Anti–Discrimination Division (UADD), Jones again focused on her concern about a stress related reoccurrence. At the hearing before the administrative law judge (ALJ) on the discrimination claim, Jones mentioned some additional factors for the termination. These were McCord's difficulty in reading the gas pump meters and allegations that McCord smelled of alcohol at work. These factors, however, were never discussed in the termination interview nor noted on the termination form.

McCord subsequently sought employment at numerous locations from 1989 to 1991. She worked for a short time as a janitor at an elementary school but was forced to quit due to an unrelated illness.

McCord filed a complaint alleging a violation of the Utah Anti–Discrimination Act with the UADD on October 24, 1988. The UADD found for McCord in an Order issued January 24, 1991. Maverik requested a formal hearing before an ALJ. The hearing was held on May 15, 1991. The ALJ issued findings of fact and conclusions of law on June 26, 1991. The ALJ's June 26, 1991 decision included a specific reservation of the issue of appropriate attorney fees. On September 10, 1991, the ALJ issued a Supplemental Order disposing of the issue of attorney fees.

On July 26, 1991, Maverik filed a Writ of Review with this court (first appeal). The first appeal is from the ALJ's Order of June 26, 1991. On August 26, 1991, McCord and the Industrial Commission filed motions to dismiss the first appeal

based on Maverik's failure to exhaust administrative remedies and lack of a final order. On September 16, 1991, this court ordered those motions deferred, and requested the parties include arguments on those issues in their briefs on the merits.

Despite its pending appeal, Maverik then filed a Request for Review by the Industrial Commission of the ALJ's June 26, 1991 and September 10, 1991 Orders. The date the request was filed is unclear. Counsel for Maverik signed and dated the request October 10, 1991. The request has two received dates stamped on it, October 11, 1991 and October 15, 1991. In later orders referring to the request, the Industrial Commission refers to both dates as the day it received the request. For the purposes of our review, we assume the request was received October 11, 1991.

On February 28, 1992, the Industrial Commission denied Maverik's Request for Review based on its untimeliness.[3] On March 19, 1992, Maverik filed a request with the Industrial Commission to reconsider its denial of the Request for Review. On March 30, 1992, the Industrial Commission denied Maverik's Request for Reconsideration. In this denial, the Industrial Commission recognized it could have allowed the late Request for Review if Maverik had shown good cause for extension of the time period. The Industrial Commission ruled, however, that Maverik had failed to show good cause for the extension.

On April 3, 1992, Maverik filed a "Limited Request for Reconsideration" in which it finally attempted to show good cause for its late filing of the original Request for Review. The Industrial Commission did not respond to this unique motion. On April 7, 1992, Maverik filed a Writ of Review with this court (second appeal). The second appeal is from the Industrial Commission's Order Denying Review and Order Denying Request For Reconsideration.

---

3. In the Order denying the Request for Review, the Industrial Commission also addressed and rejected Maverik's claims on the merits. Because of our ultimate conclusion, we need not and do not comment on the propriety of the Industrial Commission's disposition on the merits.

## I. THE FIRST APPEAL—EX-HAUSTION OF ADMINIS-TRATIVE REMEDIES

■ As a threshold matter, we must determine whether we have jurisdiction over the first appeal. Regardless of who raises the issue, we must dismiss a case if we determine we do not have jurisdiction. *Silva v. Department of Employment Sec.,* 786 P.2d 246, 247 (Utah App.1990) (per curiam); *see also Thompson v. Jackson,* 743 P.2d 1230, 1232 (Utah App.1987) (per curiam). "When a matter is outside the court's jurisdiction it retains only the authority to dismiss the action." *Varian-Eimac, Inc. v. Lamoreaux,* 767 P.2d 569, 570 (Utah App.1989).

■ The basic purpose underlying the doctrine of exhaustion of administrative remedies "is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson,* 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972); *see also Pacific Intermountain Express Co. v. Tax Comm'n,* 316 P.2d 549, 551 (Utah 1957) (recognizing correction rationale). Exceptions to the doctrine exist. For example, in instances where there is a chance that irreparable injury would occur if exhaustion was required or where requiring exhaustion would serve no useful purpose, the doctrine will not be applied. *See Tax Comm'n v. Iverson,* 782 P.2d 519, 524 (Utah 1989); *see also* Utah Code Ann. § 63–46b–14(2)(a) & (b) (1989).

In this case, Maverik appealed directly to this court thirty days after the ALJ's ruling. The Utah Anti–Discrimination Act provides that following the issuance of an order after a formal hearing pursuant to the Act "either party may file a written request for review of the order ... in accordance with Section 63–46b–12." Utah Code Ann. § 34–35–7.1(11)(a) (Supp.1993). This allows parties to an anti-discrimination hearing to take advantage of the general

UAPA agency review process. If no timely review is filed "the order by the presiding officer becomes the final order of the commission." *Id.* § 34–35–7.1(11)(b). This section provides that the Industrial Commission need not act on the ALJ's order in any way for that order to take effect. Thus, on the day Maverik filed its petition for review the ALJ's order was a final enforceable order of the Industrial Commission.

■ The next subsection of the Anti–Discrimination Act, however, requires an aggrieved party to file for agency review under subsection 11(a) or lose the opportunity for judicial review.[4] That subsection provides: "An order of the commission under *Subsection (11)(a)* is subject to judicial review as provided in Section 63–46b–16." *Id.* § 34–35–7.1(12) (emphasis added). Subsection 12 could have easily provided that a final order under *Subsection 11* was subject to judicial review under UAPA. The clear import of the legislature's omission of orders final under subsection 11(b) is that they are not subject to judicial review. Subsection 12 simply embodies the general principle that a party must exhaust its administrative remedies prior to obtaining judicial review. Therefore, a party adversely affected by an order of an ALJ in an anti-discrimination hearing cannot obtain judicial review of that order until it has been subject to administrative review. *Cf. Hi-Country Homeowners Inc. v. Public Serv. Comm'n,* 779 P.2d 682 (Utah 1989) (holding Utah Code Ann. § 54–7–15(2)(b) required application for rehearing prior to judicial appeal).

Furthermore, the principle of exhaustion of administrative remedies is apparently embodied in the general provisions of UAPA. One section provides: "A party may seek judicial review *only* after exhausting *all* administrative remedies available...." Utah Code Ann. § 63–46b–14(2) (1989) (emphasis added). This provides ad-

---

4. We note our concern that despite the inordinate amount of briefing and conflict in this case, no party to either of these appeals directed us to the determinative statute.

ditional support for our decision.[5] We have no jurisdiction over the first appeal and have no choice but to dismiss it.[6]

## II. THE SECOND APPEAL

### A. Industrial Commission's Jurisdiction

■ Maverik contends the filing of the first appeal, regardless of its timeliness, divested the Industrial Commission of jurisdiction to continue to act in the case. Thus, according to Maverik, every action taken by the Industrial Commission after the ALJ's June 26 Order is a nullity. Maverik would have us remand to the Industrial Commission for entry of the Supplemental Order on attorney fees and the agency appeals process. Maverik does not provide any relevant authority supporting this contention.

Other courts have consistently recognized an appeal from a non-final order does not divest the administrative tribunal of jurisdiction. For example, in *Fiebig v. Wheat Ridge Regional Center*, 782 P.2d 814 (Colo.App.), *cert. denied*, (Colo. Oct. 2, 1989), the court held an untimely petition for judicial review did not divest the agency of jurisdiction to act. *Id.* at 816. In *Fiebig*, an employee appealed his termination to the State Personnel Board. The Board referred the complaint to a hearing officer who ruled the allegations of sexual misconduct against the employee were without merit. The hearing officer, however, upheld the termination on the grounds the employee could no longer perform his job due to the allegations. Both parties appealed the decision to the Board. The Board ruled the hearing officer's findings were insufficient and remanded the case to the officer for a new hearing. The employer appealed the Board's ruling to the court of appeals. Subsequently, the hearing the Board ordered was held and the hearing officer ruled in favor of the employee. The employer filed a motion with the Board to declare the hearing officer's order invalid on the grounds the appeal to the court eliminated the agency's jurisdiction. The Board denied the motion. The court of appeals upheld the Board's ruling because "an appeal to a court without jurisdiction does not divest the agency of jurisdiction to proceed with the action on the merits." *Id.* at 816. *Accord Northwest Central Pipeline Corp. v. State Corp. Comm'n*, 241 Kan. 165, 735 P.2d 241 (1987).

Similarly, we have recognized a notice of appeal filed while a trial court is considering a proper post-judgment motion does not confer jurisdiction on this court. *DeBry v. Fidelity Nat. Title Ins. Co.*, 828 P.2d 520, 523 (Utah App.1992), *cert. denied*, 857 P.2d 948 (Utah May 14, 1993). We reasoned "to permit an appeal would be an affront to judicial economy" because allowing the tri-

---

**5.** Because we find the Anti–Discrimination Act required Maverik to petition for review by the Industrial Commission, we do not directly address, but merely acknowledge, some conflict between our decision and *Heinecke v. Department of Commerce*, 810 P.2d 459 (Utah App. 1991). Although the Industrial Commission asks us to revisit that decision, we find it unnecessary at this time. In *Heinecke*, we focused on the language of Utah Code Ann. § 63–46b–12(1)(a) (1989) and held a petitioner need not avail himself of a review permitted by agency rule prior to filing an appeal to this court. We distinguished such permissive review from review which is statutorily mandated. *Id.* at 462. *See also Hi–Country Homeowners Assoc. v. Public Service Comm'n*, 779 P.2d 682, 684 (Utah 1989) (holding review pursuant Utah Code Ann. § 54–7–15(2)(b) must be exhausted prior to judicial appeal).

In *Heinecke*, however, we did not address the impact of Utah Code Ann. § 63–46b–14(2) (1989) which provides: "A party may seek judicial review *only* after exhausting *all* administrative remedies available...." *Id. See also Tax Comm'n v. Iverson*, 782 P.2d 519, 524 n. 3 (Utah 1989) (citing section 63–46b–14 for proposition petitioner must exhaust administrative remedies prior to judicial review). According to the Industrial Commission section 63–46b–14(2) requires a party to utilize every possible agency review prior to filing an administrative appeal. We note *Heinecke* was rendered without the benefit of briefing by counsel. *Heinecke*, 810 P.2d at 462. Further, we specifically recognized we might revisit *Heinecke* at an appropriate point in the future. *Id.* at 464 n. 6. That day still awaits.

**6.** Regardless of the premature nature of its appeal, Maverik asks us to apply Utah Rule of Appellate Procedure 4(c) and find the appeal procedurally proper. Maverik fails to note, however, that Rule 4(c) does not apply to petitions for review of administrative actions. *See* Utah R.App.P. 18.

al court to dispose of the motion might eliminate needless appeals and discourage pointless delay. *Id. See also Williams v. City of Valdez*, 603 P.2d 483, 488 (Alaska 1979) (holding appeal brought from non-final order of a trial court does not divest court of jurisdiction); *Knox v. Dick*, 99 Nev. 514, 665 P.2d 267, 269 (Nev.1983) (holding "appeal from a non-appealable order does not divest the trial court of jurisdiction"). Likewise here, allowing an untimely appeal to divest the agency of jurisdiction creates the possibility of multiple appeals and needless delays.

Under the rule for which Maverik argues, a party who prematurely appeals an agency decision could unjustly delay further agency action. The rationale behind allowing continuing jurisdiction in the agency following an appeal from a non-final order applies with equal force to allow continuing jurisdiction where the action is subject to further administrative review. We thus follow our sister jurisdictions and conclude appeals from agency orders subject to further administrative review do not divest the agency of jurisdiction. Therefore, the Industrial Commission had jurisdiction to act after the first appeal was filed.

### B. Timeliness

McCord and the Industrial Commission argue we should dismiss the second appeal because Maverik's Request for Review of the Final Order of the ALJ was untimely. Maverik responds its request was timely because either (1) Utah Rule of Civil Procedure 6(e) gives it three extra days to file the appeal, (2) the filing date is the date of mailing or, (3) the Industrial Commission abused its discretion in failing to extend the filing deadline by one day. The Final Order was issued September 10, 1991 and Maverik filed its Request for Review October 11, 1991. Whether URCP 6(e) is applicable or whether the crucial date is the mailing date are questions that involve the agency's application or interpretation of

general law which we review under section 63–46b–16(4)(d) for correction of error. *Morton Int'l, Inc. v. Auditing Div.*, 814 P.2d 581, 587–89 (Utah 1991); *King v. Industrial Comm'n*, 850 P.2d 1281, 1285–86 (Utah App.1993). *See also SEMECO v. Auditing Div.*, 849 P.2d 1167, 1172 (Utah 1993) (Durham, J., dissenting).

#### 1. Date of Filing

■ UAPA provides a request for review must be filed "within 30 days after the issuance of the order...." Utah Code Ann. § 63–46b–12(1)(a) (1989). The request must also "be sent by mail to the presiding officer and to each party." *Id.* § 63–46b–12(1)(b)(iv). The parties agree the order was dated and issued September 10, 1991. *See Dusty's Inc. v. Auditing Div.*, 842 P.2d 868, 870 (Utah 1992) (holding administrative order is issued on date on face of order).

Maverik first argues that Utah Rule of Civil Procedure 6(e) gives it a three day extension on the thirty day filing deadline. That rule provides: "Whenever a party ... is required to do some act ... *within a prescribed period after the service of a notice* ... upon him and the notice ... is served by mail, 3 days shall be added to the prescribed period." Utah R.Civ.P. 6(e) (emphasis added). That rule must be read in light of section 63–46b–12(1)(a) of UAPA which requires a party to appeal thirty days after the *issuance* of the administrative ruling. Thus, Rule 6(e) does not apply because under section 63–46b–12(1)(a) of UAPA the time for appeal runs from the issuance of an order not from the service of an order on a party.

#### 2. Filing Requirement

■ Maverik next argues Utah Rule of Civil Procedure 5[7] somehow supports its contention the date of mailing is the relevant date. Rule 5(d) explicitly recognizes a distinction between the filing of documents and the service of documents on a party. *See* Utah R.Civ.P. 5(d).[8] All the language

---

**7.** Rule 5 relates to the service and filing of papers. *See* Utah R.Civ.P. 5.

**8.** That section provides:

All papers after the complaint required to be *served* upon a party shall be *filed* with the

of Rule 5 relied on by Maverik relates to service on a party not to the filing of documents necessary to start an appeal and is, thus, inapposite. Likewise, Maverik's attempted reliance on the language of section 63–46b–12(1)(b)(iv) is unpersuasive. The requirement that requests for review be sent to the presiding officer and the opposing party is a requirement of service, not of filing.

Further, it is clear that under the procedural rules which govern our courts, filing requires actual delivery to the court. For example, in *Silva v. Department of Employment Sec.*, 786 P.2d 246 (Utah App. 1990) (per curiam), we dismissed, for lack of jurisdiction, a claim of a petitioner whose petition for review to this court arrived one day late in the mail. The petition had been mailed two days prior to the day the petition was due. We noted: "The argument that an appeal is filed when mailed has been consistently rejected in the past and we reject it here." *Id.* at 247 (citing *Isaacson v. Dorius*, 669 P.2d 849 (Utah 1983); *State v. Palmer*, 777 P.2d 521 (Utah App.1989)). In *Isaacson*, the supreme court noted that interpreting filing as mailing could lead to chaos in appellate procedure. *Isaacson*, 669 P.2d at 851.

Maverik provides no reason why we should interpret the term filing as used in UAPA inconsistently with how we interpret it under the procedural rules used in courts. Thus, absent a showing of good cause for an extension, the term filing as used in section 63–46b–12 requires, as a prerequisite to the agency taking jurisdiction over a review, actual delivery of the necessary documents to the agency within the thirty day time limit.

## 3. Extension of Filing Deadline

Maverik next argues the Industrial Commission abused its discretion by failing to grant a one day extension of the filing deadline. Maverik does not identify the

portion of 63–46b–16(4) under which it asks us to review this claim. *See King v. Industrial Comm'n*, 850 P.2d 1281, 1286 n. 6 (Utah App.1993) (encouraging counsel to clearly identify the portion of 63–46b–16(4) under which review is sought). Because the authority to grant an extension in a filing deadline is not in an agency-specific statute, but rather a general provision of UAPA, and because Maverik is arguing an abuse of discretion standard, it appears Maverik is necessarily seeking review under Utah Code Ann. § 63–46b–16(4)(h)(iv) (1988). That catch-all portion of section 63–46b–16(4) provides we can grant relief if the agency action is "arbitrary or capricious." *Id.* We review agency action under this section for reasonableness. *Anderson v. Public Serv. Comm'n*, 839 P.2d 822, 824 (Utah 1992). *See also SEMECO v. Auditing Div.*, 849 P.2d 1167, 1174 (Utah 1993) (Durham, J., dissenting).

a. The Original Request for Reconsideration

■ For an agency to extend any deadline established under UAPA the petitioner must show good cause. *See* Utah Code Ann. § 63–46b–1(9) (1988). In its Request for Reconsideration, Maverik made no attempt to show good cause. The Industrial Commission, in its Order denying the Request for Reconsideration, specifically notes Maverik's failure to show good cause. Thus, the Industrial Commission's decision denying Maverik a one day extension is not unreasonable in light of Maverik's complete failure to articulate any facts on which to base a good cause determination.

b. The Second Request for Reconsideration

■ In a document captioned "Limited Request for Reconsideration" filed April 3, 1992, six days after the original Request for Reconsideration was denied and four days before the second appeal was filed,

---

court either before *service* or within a reasonable time thereafter, but the court may upon motion of a party or on its own initiative order that depositions, interrogatories, requests for documents, requests for admissions

and answers and responses thereto not be *filed* unless on order of the court or for use in the proceeding.

Utah R.Civ.P. 5(d) (emphasis added).

Maverik finally attempts to show good cause. There is no authorization for a "Limited Request for Reconsideration" in UAPA. Counsel's failure to comply with the rules which set forth the requirements for getting an extension of the filing deadline does not give him the right to create another layer of administrative appeal.[9] No section of UAPA provides a petitioner with the right to file more than one request for reconsideration.[10] Endorsing such a procedure would allow mischievous counsel to use the right to reconsideration as a tool for needless, and in some cases, harmful delay. Thus, this filing was appropriately disregarded by the Industrial Commission.[11]

## ATTORNEY FEES

■ Because we reject both appeals, we necessarily affirm the award of costs and attorney fees and the award of damages

---

**9.** As our supreme court has noted in a different setting, if we allow a second motion for reconsideration or "re-reconsideration" what is to prevent another motion for re-re-reconsideration? "'Tenacious litigants and lawyers might persist in motions, arguments and pressures and theoretically [this could go on] *ad infinitum.*'" *Watkiss & Campbell v. FOA & Sons,* 808 P.2d 1061, 1064 (Utah 1991) (quoting *Drury v. Lanceford,* 18 Utah 2d 74, 415 P.2d 662, 663 (1966)) (alteration added).

**10.** Likewise, under the administrative law scheme in place prior to UAPA we noted that a petitioner could not file successive motions for review. *See Ring v. Industrial Comm'n,* 744 P.2d 602, 603 (Utah App.1987) (per curiam). Under that scheme filing material which purports to supplement an already denied motion did not revive the motion. *Id.* As we explicitly noted in *Ring,* a petitioner is only "entitled to 'one bite of the apple' on review before the Industrial Commission." *Id.* at 604. Under UAPA, the same reasoning applies to requests for reconsideration, a petitioner has only one opportunity to apply for reconsideration. *See also Utility Trailer Sales of Salt Lake, Inc. v. Fake,* 740 P.2d 1327, 1329 (Utah 1987) (recognizing rule against repetitive adjudications in arbitration setting); *Tuom v. Duane Hall Trucking,* 675 P.2d 1200, 1202 (Utah 1984) (recognizing rule against repetitive challenges to Industrial Commission determinations of spousal dependency); *Amica Mut. Ins. Co. v. Schettler,* 768 P.2d 950, 969 (Utah App.1989) (recognizing rule against successive post-judgment motions).

**11.** Even if we were to treat the second Request for Reconsideration as procedurally proper, we would dismiss the second appeal. The request would reinvoke the jurisdiction of the Industrial Commission. Under UAPA, because the Industrial Commission did not respond to the request it would be deemed denied April 23, 1992 by operation of law. *See* Utah Code Ann. § 63–46b–13(3)(b) (1989); *Lopez v. Career Serv. Review Bd.,* 834 P.2d 568, 572 (Utah App.1992), *cert. denied,* 843 P.2d 1042 (Utah 1992). Therefore no "final agency action" for this court to review existed until after April 23, 1992.

UAPA provides:
Within 20 days after the date that an order is issued for which review by the agency or by a superior agency under Section 63–46b–12 is unavailable, and if the order *would otherwise constitute final agency action,* any party may file a written request for reconsideration with the agency.... Utah Code Ann. § 63–46b–13(1)(a) (1989) (emphasis added).
This section provides a petitioner with the option of applying to the agency for reconsideration or appealing to the courts. It does not provide a petitioner the opportunity to pursue both routes concurrently. The emphasized language indicates a petitioner who decides to file a request for reconsideration no longer has a "final agency action" from which to appeal. The petitioner must wait until the request is either responded to in writing or denied by operation of law. Section 63–46b–13(1)(a) provides a request for reconsideration is not a mandatory step in exhausting administrative remedies or reaching "finality" to give the courts jurisdiction over an appeal. Under UAPA, a request for reconsideration asks the highest level of administrative decision maker to reassess a claim they have previously examined. A request for review, on the other hand, asks a higher level decision maker to evaluate the claim. *Compare* Utah Code Ann. § 63–46b–12 (1989) (agency review procedures) *with id.* § 63–46b–13 (requests for reconsideration). Petitioners who choose to take advantage of the statutory provision that allows them to request reconsideration must thereafter accept the consequences, one of which is that an appeal to the judicial system cannot be made until the agency acts on the request.
Thus, the second request for reconsideration would have given the Industrial Commission another opportunity to address the merits. Therefore, as of April 7, 1992, Maverik would have no final order from which to appeal. Under this analysis, the second appeal would be brought from a non-final order over which we have no jurisdiction and we would dismiss it.
Further, the window for Maverik to file an appeal from the Industrial Commission's denial of the second request would have been from April 23, 1992 to May 23, 1992. Thus, regardless of the analysis we apply, Maverik is left without judicial review of the merits.

authorized by the ALJ. The ALJ awarded legal costs of $1536.26 to McCord. She awarded $19,731 in legal fees to McCord. She also awarded $11,832.80 in back pay to McCord.[12] These awards are authorized by Utah Code Ann. § 34–35–7.1(9) (1988). We also award McCord attorney fees on appeal under the same statute. Thus, we remand the case to the Industrial Commission for the sole purpose of assessing the appropriate amount of attorney fees for this appeal.

## CONCLUSION

Maverik brought the first appeal prior to exhausting the available administrative remedies. Maverik brought the second appeal from a reasonable ruling of the Industrial Commission that Maverik's Request for Review was untimely. Thus, we dismiss case number 910413–CA and affirm the Order of the Industrial Commission in case number 920206–CA. We remand the case to the Industrial Commission for the sole purpose of assessing attorney fees on appeal.

JACKSON and RUSSON, JJ., concur.

---

**12.** Counsel for Maverik has consistently complained no actual damages amount was set in the ALJ's order. He apparently is unwilling to do the math using the formula established in the ALJ's original order. To eliminate any confusion and reduce future conflict in this unnecessarily contentious litigation, we set forth the back pay calculation using the formula established in the ALJ's original order.

| | |
|---|---:|
| Oct 15, 1988 to March 31, 1990 | |
| $3.35 per hr for 24 hrs a week | |
| $80.40 per week for 76 weeks | 6,110.40 |
| April 1, 1990 to March 31, 1991 | |
| $3.80 per hr for 24 hrs a week | |
| $91.20 per week for 52 weeks | 4,742.40 |
| April 1, 1991 to June 26, 1991 | |
| $4.25 per hr for 24 hrs a week | |
| $102.00 per week for 12.5 weeks | 1,275.00 |
| Subtotal | 12,127.80 |
| Minus earnings at Ashley Elementary | 295.00 |
| Back Pay award equals | $11,832.80 |